```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
PAVEL ANDREENKO,                      : 09 Civ. 8535 (CM) (JCF)
                                      :
              Petitioner,             :        REPORT AND
                                      :     RECOMMENDATION
     - against -                      :
                                      :
ERIC H. HOLDER, Attorney General of:
the United States of America;         :
JANET NAPOLITANO, Secretary of        :
Department of Homeland Security;      :
JOHN T. MORTON, Secretary of          :
Immigration and Customs               :
Enforcement; CHRISTOPHER SHANAHAN,    :
DHS/ICE Field Office Director for     :
the New York District; WAYNE          :
MULLER, COTR, Executive Officer       :
for Varick Federal Detention          :
Facility; EDWARD REILLY, Warden of    :
Varick Federal Detention Facility;    :
                                      :
              Respondents.            :
- - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:

Pavel Andreenko brings this petition for habeas corpus pursuant to 28 U.S.C. § 2241, seeking release on bail from an Immigration and Customs Enforcement ("ICE") detention facility and provision of medical services. He contends that the statutory authority for his detention, Section 236(c) of the Immigration and Nationality Act (the "INA"), codified as 8 U.S.C. § 1226(c), is unconstitutional and that he is being denied adequate medical treatment. For the reasons set forth below, I recommend that the petition be denied.

Background

Mr. Andreenko and his family are native citizens of Russia who

entered the United States in 1991 as nonimmigrant visitors.
(Written Decision and Order of the Immigration Judge dated Feb. 19,
2002 ("Immigration Order"), attached as Exh. 2 to Declaration of
Natasha Oeltjen dated Dec. 15, 2009 ("Oeltjen Decl."), at 1). In
March 1998, the petitioner, his parents, and his brother were
placed in removal proceedings. (Immigration Order at 1;
Immigration and Naturalization Service Notice to Appear, attached
as Exh. 1 to Oeltjen Decl.). However, in February 2002, they were
granted suspension of deportation (Immigration Order at 5), and Mr.
Andreenko was subsequently designated a lawful permanent resident
("LPR"). (Department of Homeland Security Notice to Appear ("DHS
Notice to Appear"), attached as Exh. 6 to Oeltjen Decl., at 3). At
various times between June 2005 and September 2008, the petitioner
was convicted of criminal possession of cocaine and of marijuana,
promotion of prison contraband, and criminal mischief in the fourth
degree. (New York Certificates of Disposition ("Certs. of Disp.")
Nos. 205002, 24354, 19514, and Virginia record of plea, No. 702482,
attached as Exh. 3 to Oeltjen Decl.). He was sentenced to a total
of 11 months in prison for these offenses. (Certs. of Disp. Nos.
2434, 19514).

As a result of his convictions, Mr. Andreenko was detained by
the Department of Homeland Security ("DHS") in October 2008,
pursuant to INA § 236(c), 8 U.S.C. § 1226(c). (DHS Notice of
Custody Determination, attached as Exh. 5 to Oeltjen Decl.; DHS

Notice to Appear at 3).  In November 2008, he conceded that he is subject to removal as an alien convicted of a controlled substance offense.  (DHS Notice to Appear at 3).  However, the petitioner also applied for cancellation of removal under INA § 240A, codified at 8 U.S.C. § 1229b.  (Application for Cancellation of Removal for Certain Permanent Residents, attached as Exh. 7 to Oeltjen Decl.).  A hearing before an Immigration Judge ("IJ") on the merits of that application was scheduled for October 15, 2009, (Notice of Hearing in Removal Proceedings ("Notice of 10/15/09 Hearing"), attached as Exh. 8 to Oeltjen Decl.), but was adjourned for various reasons.  The respondent claims the delay was because Mr. Andreenko retained new counsel and filed for deferral of removal under the Convention Against Torture.  (Application for Asylum and for Withholding of Removal ("Deferral Application"), attached as Exh. 9 to Oeltjen Decl., at 5; Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus at 3).  The petitioner states that the hearing was adjourned because his family members could not be present and he was waiting for documents from multiple institutions.  (Letter of Pavel Andreenko dated June 22, 2010 ("Pet. Letter")).  A hearing on the merits of his pending applications is now scheduled to continue on August 16, 2010. (Notice of Hearing in Removal Proceedings ("Notice of 8/16/10 Hearing"), attached to Letter of Natasha Oeltjen dated June 10, 2010 ("Oeltjen Letter"), at 1).

Discussion

    A.   <u>Constitutionality of Detention</u>

Federal law mandates detention of aliens who have committed certain crimes, and release pending removal can generally be granted only in narrow circumstances not applicable here.   INA § 236(c), 8 U.S.C. § 1226(c).   This detention is explicitly exempt from judicial review.[1]   8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.").   The petitioner contends that his continued detention under 8 U.S.C. § 1226(c) violates his Fifth Amendment right to due process, and he requests release on bail.   (Emergency Petition for a Writ of Habeas Corpus ("Petition") at 11-13); Petitioner's Answer to Respondents Opposition for His Petition for a Writ of Habeas Corpus [sic] ("Pet. Reply") at 1).

Courts previously disagreed about whether Section 1226(c) is constitutional.   The Courts of Appeal for the Seventh and Eleventh Circuits upheld the statute.   <u>Parra v. Perryman</u>, 172 F.3d 954, 958 (7th Cir. 1999) (finding Section 1226(c) constitutional in light of "sweeping power Congress possesses to prescribe treatment of

---

    [1] However, "Section 1226(e) contains no explicit provision barring habeas review, and . . . its clear text does not bar [a] constitutional challenge to the legislation authorizing [] detention without bail." <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003).

4

aliens," high flight risk of those released on bail, and inevitability of petitioner's removal); <u>Richardson v. Reno</u>, 162 F.3d 1338, 1363 & n.119 (11th Cir. 1998) ("[Because] removal proceedings are imbued with procedural safeguards that satisfy the Due Process clause[,] . . . no judicial review is required to provide the process due to a permanent resident alien facing removal. . . . Congress acts well within its plenary power in mandating detention of a criminal alien . . . facing removal proceedings."), <u>vacated on other grounds</u>, 526 U.S. 1142 (1999). However, the Third, Fourth, Ninth, and Tenth Circuits held mandatory detention of certain aliens to be unconstitutional. <u>Patel v. Zemski</u>, 275 F.3d 299, 311-12 (3d Cir. 2001) (mandatory detention of alien without individualized inquiry excessive in relation to governmental interests); <u>Welch v. Ashcroft</u>, 293 F.3d 213, 224-28 (4th Cir. 2002) (where detainee not dangerous and poses little flight risk, 14-month detention constitutes punishment without benefit of trial); <u>Kim v. Ziglar</u>, 276 F.3d 523 (9th Cir. 2002) (government's justification for mandatory detention insufficient to overcome LPRs' liberty interests); <u>Hoang v. Comfort</u>, 282 F.3d 1247, 1260 (10th Cir. 2002) (finding that "the government has failed to show special justifications for the mandatory detention provision contained in § 236(c) which are sufficient to outweigh a lawful permanent resident alien's constitutionally protected liberty interest in avoiding physical

restraint without an individualized determination of flight risk or danger to the public."). In this circuit, some district courts found the statute to violate due process. See, e.g., Zgombic v. Farquharson, 89 F. Supp. 2d 220, 234-37 (D. Conn. 2000) (detention of LPR under INA § 236(c) absent individualized hearing violates procedural due process); Rogowski v. Reno, 94 F. Supp. 2d 177 (D. Conn. 1999) (mandatory detention of LPR who conceded deportability based on felony convictions violates substantive due process).

In Demore, 538 U.S. at 531, the Supreme Court settled the issue, finding that the statute is not unconstitutional per se. The Court reasoned that the government has a legitimate interest in preventing aliens from fleeing and that detention under Section 1226(c) has "a definite termination point" and is generally of short duration. Id. at 528-30. Indeed, Section 1226(c) detentions are by nature limited in time. Without suggesting when detention would become presumptively unreasonable, the Court noted in Demore that detention under Section 1226(c) usually lasts for approximately one and one-half months if the alien does not appeal the IJ's determination of deportability, or approximately five months if the alien chooses to appeal. Id. at 530.

Justice Kennedy, whose concurring opinion was pivotal, acknowledged that constitutional concerns would become more pronounced should detention under Section 1226(c) become prolonged. He stated that individualized bond hearings might be warranted for

6

LPRs "if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring) (citing Zadvydas v. Davis, 533 U.S. 678, 684-86 (2001)). Based on this language, courts after Demore have engaged in case-by-case inquiries concerning the reasonableness of detention, considering factors such as the duration of detention, the likelihood of flight, potential danger to the community, and the probability of actual removal. See, e.g., Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) (remanding to district court to grant habeas for alien detained two years and eight months or direct a hearing "before an [IJ] with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community"); Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2004) (finding one and one-half year detention of criminal alien with no chance of actual removal unreasonable); Alli v. Decker, 644 F. Supp. 2d 535, 541 (M.D. Pa. 2009) (once detainee makes showing that prolonged detention is no longer reasonable, "the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community"); Fuller v. Gonzales, No. 04 Civ. 2039, 2005 WL 818614, at *6 (D. Conn. Apr. 8, 2005) (ordering bond hearing for LPR detained for two years on grounds that "there is no indication that [her] section 236(c) detention is anywhere near over" and that her defense to removal appears highly meritorious).

At the time he filed this petition, Mr. Andreenko had been in detention for approximately thirteen months.  The period of his detention has been considerably longer than the average detention discussed in Demore, 538 U.S. at 530.  However, courts have held that, where delay is not attributable to the government, such prolonged detention does not necessarily violate due process.  See Miller v. Shanahan, No. 09 Civ. 9712, 2010 WL 481002, at *3 (S.D.N.Y. Jan. 29, 2010) (prolonged detention constitutional because "directly attributable to [petitioner's] efforts to contest his removal"); Adler v. United States Department of Homeland Security, No. 09 Civ. 4093, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (same); Ovchinnikov v. Clark, 543 F. Supp. 2d 1265, 1266 (W.D. Wash. 2008) (same).  In Adler, a permanent resident who conceded deportability had been detained for fifteen months, three times longer than the average duration.  However, the court ruled that the delay was due to the petitioner's repeated motions; there was no evidence that the government "dragged its feet."  Adler, 2009 WL 3029328, at *2; cf. Scarlett v. United States Department of Homeland Security, 632 F. Supp. 2d 214, 223 (W.D.N.Y. 2009) (five-year detention, including two years post-sentence, impermissible where prolonged due to government's attempt to seek a favorable forum).  The court in Adler also held that since the petitioner conceded his deportability, and therefore was likely to be ultimately removed, the primary justification for mandatory

8

detention under Section 1226(c) -- limiting the risk that the removable alien will flee -- supported the constitutionality of his continued detention.  <u>Adler</u>, 2009 WL 3029328, at *2.

Like the petitioner in <u>Adler</u>, Mr. Andreenko does not contest his deportability, and his prolonged detention is at least partly attributable to his own actions.  A hearing on the merits of his application for cancellation of removal was scheduled for October 2009, but was delayed when he retained new counsel who filed an application for deferral of removal.  (Notice of 10/15/09 Hearing; Deferral Application; Notice of 8/16/10 Hearing).  Although Mr. Andreenko has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.  <u>Ovchinnikov</u>, 543 F. Supp. 2d at 1271 ("Continuances granted solely for the petitioner's benefit should not count" against government when considering constitutionality of detention under Section 1226(c)); <u>Prince v. Mukasey</u>, 593 F. Supp. 2d 727, 735-36 (M.D. Pa. 2008) ("While this Court would not, in any way, even infer that petitioners should not file appropriate documents challenging their detention or the reasons for detention, petitioners . . . must know that their own conduct has to be included in determining whether or not a 'reasonable time' was exercised by the authorities in determining the proper response to any assertions made either by Petitioner or the Government.").  In a recent letter, Mr. Andreenko

9

provides additional reasons for the delay in his proceedings, including the absence of his father and brother from the hearing, missing documents, and the IJ's request for a translated copy of "an army draft letter" from Russia at the next hearing. (Pet. Letter at 1). Although these elements may be out of his control, neither can they fairly be imputed to the government.

At this point Mr. Andreenko's detention does not violate due process because there has been no showing that it was prolonged by the government nor that it is likely to last indefinitely or for a lengthy additional period of time, nor that his ultimate removal is improbable. The petitioner has explained that he "is in the process of filing [] 440 motions to vacate his 2005 controlled substance conviction in New York and his 2007 possession of marijuana conviction in Fredericksburg, [Virginia]. . . . due to Padilla v. Kentucky," 599 U.S. __, 130 S.Ct. 1473 (2010). (Pet. Letter at 1). However, the probability of the petitioner's success in these planned attempts to vacate his previous convictions is speculative, and thus his likelihood of avoiding removal on this basis is too remote to warrant habeas relief.

If, at some point in the future, there are factors involving the length of his detention implicate constitutional concerns, the petitioner is entitled to file another habeas petition. See Sulayao v. Shanahan, No. 09 Civ. 7347, 2009 WL 3003188, at *8 (S.D.N.Y. Sept. 15, 2009) ("In the event petitioner remains in

custody . . . the parties are invited to address . . . whether petitioner's continued detention, without an individualized hearing to determine if there are terms and conditions that would reasonably assure petitioner's appearance if he were released, amounts to a deprivation of liberty without due process of law."); Samuel v. Immigration and Naturalization Service, No. 01 Civ. 3413, 2005 WL 120221, *2 (S.D.N.Y. Jan. 20, 2005) (denying habeas petition without prejudice to re-filing once stay of deportation lifted, when petitioner will have "burden of showing that there is good reason to believe that there is no significant likelihood of removal in the near future"). Therefore, I recommend that the petitioner's claim for habeas relief be denied without prejudice.

   B. Medical Treatment

   The petitioner also seeks a court order requiring ICE to allow him to seek outside medical treatment. He has submitted a detailed description of the multiple health problems that he is experiencing, including severe dental pain, back pain, digestive problems, drastic weight loss, Hepatitis C, and psychological issues such as anxiety and depression. (Petition at 4-11). He has also suffered a panic attack and attempted suicide during his detention. (Petition at 5-6, 8). Mr. Andreenko claims that the government is denying him adequate medical treatment, that he is often denied timely medication or psychiatric consultation, and that his meals are inappropriate for his digestive and dental

11

conditions. (Petition at 4-11).

Specifically, the petitioner seeks a court order that the respondents allow him to receive dental treatment from his private dentist. (Pet. Reply 12). As of June 2010, he is reportedly receiving regular dental treatment at the detention facility. (Oeltjen Letter at 2). A dentist under contract with the Division of Immigration Health Services recommended extraction of several teeth, but a private dentist consulted by the petitioner proposed an alternative plan that would not involve extractions. (Declaration of Peter D'Orazio dated Dec. 15, 2009, ¶¶ 4, 6). Mr. Andreenko wishes to be treated by his private dentist and is willing to pay for the procedures himself. (Pet. Reply at 12). He also requests a court order that the respondents provide him with chiropractic treatment and weekly psychiatric care. (Pet. Reply at 12).

The law is well-settled that a writ of habeas corpus is not the appropriate legal vehicle for seeking relief based on the conditions of detention. Copes v. McElroy, No. 98 Civ. 2589, 2001 WL 830673, at *6 (S.D.N.Y. July 23, 2001); Kamara v. Farquharson, 2 F. Supp. 2d 81, 89 (D. Mass. 1998). As the respondents correctly point out, habeas corpus addresses the validity or duration of custody, not the conditions of detention. Because the petitioner is seeking injunctive relief based on inadequate medical treatment by respondents who are federal actors, an action pursuant to Bivens

12

v. Six Unknown Named Agents, 403 U.S. 388 (1971), is the appropriate means of seeking relief. Copes, 2001 WL 830673, at *6; Kamara, 2 F. Supp. 2d at 89.

In addition, the petitioner requests parole based on urgent humanitarian reasons, citing 8 C.F.R. § 212.5(b)(1). (Pet. Reply at 4). This provision states that aliens who have been detained in accordance with 8 C.F.R. § 235.3(b) or (c) maybe be paroled "on a case-by-case basis for urgent humanitarian reasons," including "serious medical conditions in which continued detention would not be appropriate." 8 C.F.R. § 212.5(b)(1). However, Sections 235.3(b) and (c) apply only to aliens subject to detention upon arrival in the United States and thus are not applicable to Mr. Andreenko, since he entered the United States legally in 1991 and was detained pursuant to an entirely different statutory scheme. See § 8 C.F.R. 235.3; Reno v. Flores, 507 U.S. 292, 296 & n.2 (1993). Additionally, "[t]he determination whether or not to grant parole lies solely within the Attorney General's discretion, pursuant to . . . 8 C.F.R. § 212.5," not with the federal court. Pozdniakov v. Immigration and Naturalization Service, 354 F.3d 176, 177 (2d Cir. 2003).

Accordingly, I recommend that the petitioner's request for release due to his medical conditions be denied without prejudice to his filing a Bivens action or other appropriate claim addressed to the conditions of his confinement. See Copes, 2001 WL 830673,

13

at *6.

## Conclusion

For the reasons set forth above, I respectfully recommend that Mr. Andreenko's application for a writ of habeas corpus be denied and the petition be dismissed. Dismissal, however, should be without prejudice to any claim with respect to conditions of confinement that the petitioner might properly bring. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Colleen McMahon, U.S.D.J., Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE

Dated: New York, New York
       June 25, 2010

14

Copies mailed this date to:

Pavel Andreenko
A070529130
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

Natasha Oeltjen, Esq.
Assistant United States Attorney
86 Chambers Street
New York, New York 10007